IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS EDMUND ANGROS,           )
                                )
            Plaintiff,           )
                                )       Civil Action No. 24-1058
       v.                        )
                                )
FRANK BISIGNANO,[1]              )
COMMISSIONER OF SOCIAL SECURITY, )
                                )
            Defendant,           )

MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Thomas Edmund Angros

("plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act

("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff contends the Administrative Law Judge

("ALJ") a) erred by failing to include mental health limitations in plaintiff's residual functional

capacity ("RFC") finding; b) failed to provide a sufficient explanation of the analysis she used to

exclude those limitations; and c) failed to present all non-exertional limitations to the vocational

expert ("VE") which impacted the full-time work the VE testified a hypothetical worker like

plaintiff would be able to perform.  Plaintiff asserts that the ALJ's decision is not supported by

substantial evidence and should be reversed.  It is plaintiff's contention that the case should be

remanded for the Commissioner to consider properly all the evidence of record, including all

---

1.  Frank Bisignano became the Commissioner of Social on May 7, 2025, and is automatically substituted for then-Acting Commissioner Leland Dudek as a party in this case pursuant to Fed. R. Civ. P. 25(d). No further action is required due to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

plaintiff's non-severe mental health limitations.[2]  The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  The court will grant defendant's motion for summary judgment (ECF No. 9) and deny plaintiff's motion (ECF No. 7) for the reasons set forth below.


## II.    PROCEDURAL HISTORY

On April 11, 2022, plaintiff protectively filed the current Title II application for DIB beginning March 16, 2020, and amended to October 20, 2020, which is at issue before the court. (R. at 10.)  The claim was initially denied on September 1, 2022, and again upon reconsideration on November 21, 2022. (R. at 10, 100, 107.)  On November 29, 2022, plaintiff requested a hearing before an administrative law judge. (R. at 10, 111.)  Plaintiff agreed to appear by telephone and testified at a hearing before the ALJ on July 20, 2023. (R. at 37-79.)  At the hearing plaintiff amended the date to commence his disability onset to October 20, 2020. (R. at 10.)  Plaintiff was represented by an attorney at the hearing. (Id.)  An impartial VE testified by phone at the hearing. (Id.)

In a decision dated October 25, 2023, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under § 1614(a)(3)(A) and was "capable of performing past

---

2.  Plaintiff's appeal does not contest the opinion of the ALJ relative to any previously claimed physical limitations; accordingly, any physical impairments will not be addressed in this opinion. See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").

relevant work." (R. at 21-22.)  Plaintiff timely requested a review of that determination and by

letter dated December 6, 2023, the Appeals Council denied the request for review.  The decision

of the ALJ became the final decision of the Commissioner. (R. at 1-3.)  Plaintiff subsequently

commenced the present action seeking judicial review.

### III.    LEGAL STANDARD OF REVIEW

Judicial review of the Commissioner's final decision denying a claimant's application for

benefits is provided by federal law. 42 U.S.C. § 405(g).  The judicial review of a final decision is

plenary with respect to questions of law. Schaudeck v. Comm'r Soc. Sec., 181 F.3d 429, 431 (3d

Cir. 1999).  With respect to factual findings, this court must determine whether there is

substantial evidence which supports the findings of the Commissioner.  "Substantial evidence is

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v.

Perales, 402 U.S. 389 (1971)).  The deferential standard has been referred to as "less than a

preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d

Cir. 2002).

This standard, however, does not permit the court to substitute its own conclusion for that

of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether

the administrative law judge's findings "are supported by substantial evidence" regardless of

whether the court would have differently decided the factual inquiry).  The court will not affirm

a determination by substituting what it considers to be a proper basis even if it might have

reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-7

(1947). The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018). "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).

## IV.    PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

### A.    Plaintiff

Plaintiff was born on February 1, 1966, and was 54 years old at the time of his claimed onset of disability in 2020. (R. at 80-81; Pl.'s Br., ECF. No. 8 at 1.) He graduated from high school and earned a computer certification following a nine-month course. (R. at 15, 44.) Plaintiff lives by himself, has a license to drive a car, and does his own cooking, cleaning, laundry and most yardwork. (R. at 14-15, 43, 55.) Plaintiff's medication list includes: "metaformin (sic), aspirin, Metropole, Lisinopril, Lipitor, magnesium, Lexapro, Nexium, Novalog, Lantus, NovaLog (sic), Truelicity (sic)." (R. at 282.) Plaintiff worked for approximately twenty-seven years as a computer programmer, including ten years as a mainframe programmer, for Mellon Bank, before he was "let go" and transitioned to a career in HVAC work. (R. at 15, 44.) Plaintiff's last job was with a restaurant group in 2020 as their chain-wide resident HVAC technician, where he also performed handyman-type work. (R. at 15, 48-49.) During the hearing, the ALJ heard testimony from plaintiff regarding his limitations, predominantly focusing on his physical limitations. (R. at 50-64.)

Plaintiff's claimed disability date, as amended at the hearing, is October 20, 2020. (R. at 10.) Plaintiff's appeal for denial of DIB focuses on his mild mental health limitations, which he claims the ALJ failed to include in the RFC or sufficiently explain why those limitations were excluded when determining plaintiff's RFC. (Pl.'s Br. ECF No. 8 at 4.)

**B.    Mental Health Medical Record**

**1.    Psychologist Dr. Miller**

On August 22, 2022, plaintiff submitted to a mental status evaluation based on his allegations of depression and anxiety. (R. at 13, 953-963.) In order to form his opinion, John Laurence Miller, Ph.D., reviewed the "Function Report" provided by plaintiff as part of his disability claim and plaintiff's "Adult Medical History Form" plaintiff prepared for the session with Dr. Miller. (R. at 953-963.) On the Function Report, plaintiff reported anxiety, specifically related to any "ladder job," as well as a "foggy" memory, no ambition, and reduced concentration and attention span. (R. at 232-237.) On the Medical History Form, plaintiff reported "memory fog," and checked boxes that he was capable of all the activities of daily living and did not need help in the home. (R. at 960-961.)

Following the interview session, Dr. Miller in his evaluation noted in the background information that plaintiff was "unable to work because of neuropathic pain" and summarized plaintiff's psychiatric history with respect to hospitalizations, outpatient treatment history, and current treatment as "none" for each. (R. at 953.) Dr. Miller documented plaintiff's current functioning, noting plaintiff denied depressive symptomatology, anxiety-related symptomatology, manic symptomatology, thought disorder symptomatology and panic attacks. (R. at 954.) He found plaintiff to demonstrate adequate social skills, appropriate appearance,

5

speech, thought, and cognitive functioning. (R. at 954-955.)  Dr. Miller noted plaintiff's intact orientation, attention and concentration, and recent and remote memory skills. (R. at 955.)  Dr. Miller provided a medical source statement based on his evaluation of plaintiff. (R. at 957.)  The areas on the medical source statement Dr. Miller checked as affected by the plaintiff's impairment were "understand and remember complex instructions," and "carry out complex instructions," where he noted "mild" restrictions for work-related mental activities. (Id.)  He noted, however, that plaintiff "reports memory and learning problems but performance [was] intact in [the] evaluation." (Id.)  On the next page of the statement Dr. Miller answered "yes" to the question that asked:

> Are any other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself) affected by the impairment? If "yes," please identify the capability and describe how it is affected.

(R. at 958.)  Below the question Dr. Miller filled in the response, "learn new skills," indicating that is the area affected by plaintiff's impairments. (Id.)

## 2.    State Agency Medical Consultants

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and RFC to work. (R. at 80-99.)  Lisa Venkataraman, M.D., on August 29, 2022, noted findings about plaintiff's medical conditions, and mental health professional, Nancy Kennedy, Psy.D., provided a psychiatric review on August 31, 2022. (R. at 84, 88.)  On reconsideration, John David Gravazzi, Psy.D., on November 11, 2022, assessed plaintiff's mental health record, (R. at 94), and Hong Sik Park, M.D., on November 21, 2022, signed the report for "Adult Overall Medical Disposition." (R. at 99.)  In the part of the report relating to "Mental Residual Functional Capability," it was noted: "No

MRFCs [Mental Residual Functional Capacities] are associated with this claim." (R. at 86, 98.) In the part of the reevaluation report titled "Assessment of Vocational Factors – Individual's Ability to Perform Past Relevant Work," which incorporated the physical residual functional capacity and mental residual functional capacity sections, under plaintiff's prior work, "Mainframe Programer" (sic), the following description was provided:

> It is not entirely clear if the claimant performed this job as more consistent with the DOT description for User Support Analyst, 032.262-010, SVP 7, Sedentary; or Technical Support Analyst, 033.162-018, SVP 7, Light, however this would be immaterial because he could perform either of these jobs as they are performed in the national economy with his current functional capacity of light, non-severe.

(R. at 98.)

Each state agency mental health consultant concluded that plaintiff demonstrated "mild" "paragraph B" criteria, and the record of his conditions found no evidence of "paragraph C" criteria, resulting in a determination that plaintiff's mental health impairment is non-severe. (R. at 83-84, 93-94.)  They each considered the medical source statement prepared by Dr. Miller and found that opinion to be "fully supported and consistent" with the residual functional capacity assessment. (R. at 84, 94.)  Each review noted the activities of daily living that plaintiff was capable of continuing, and each recommended a finding of "not disabled" with "postural and manipulative limitations;" no reviewer recommended mental health considerations impacting plaintiff's residual functional capacity. (R. at 86, 97.)

## V.    DISCUSSION

### A.    ALJ's Findings

Proceeding through the sequential evaluation process, the ALJ determined that the plaintiff had not engaged in substantial activity since his application for benefits at step one, (R. at 12); acknowledged the plaintiff had severe impairments of "right shoulder bicep tendon tear, and supraspinatus cuff tendinopathy, coronary artery disease and diabetes mellitus with neuropathy" at step two, (id.); and found that plaintiff's combination of impairments did not meet the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 at step three. (R. at 13.)

Prior to commencing step four, the ALJ determined plaintiff's RFC.  The ALJ considered plaintiff's entire medical record, to include the medical opinions and state administrative medical reviewers' reports discussed above, and determined plaintiff's RFC as follows:

> [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to four hours of standing and walking. The claimant can never climb ladders, ropes and scaffolds, but he can occasionally climb ramps and stairs, frequently balance and stoop, occasionally kneel and crouch but never crawl. He can frequently reach, including reaching overhead with his right arm and he can frequently handle and finger with both hands.

(R. at 14.)

At step four, the ALJ determined,

> [plaintiff] is capable of performing past relevant work as a computer programmer, DOT 030.162-010, described as sedentary, skilled work, SVP 7 that was performed by the claimant at the medium exertional level. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(R. at 21.)  Because the ALJ determined plaintiff was not disabled, as defined in sections 216(i)

and 223(d) the SSA, the sequential evaluation concluded at step four. (<u>Id.</u>)

**B.    Alleged Errors**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, he argues that the ALJ erred because the ALJ failed to "include the effects of non-severe mental impairments causing mild limitations in the RFC finding, without explaining their exclusion." (Pl.'s Br., ECF. No. 8 at 7.)  By not presenting those limitations to the VE for consideration in hypotheticals, plaintiff avers that the ALJ's error is not harmless, and the case must be remanded for further proceedings to remedy the issue and the mental limitations can be fully considered. (<u>Id.</u> at 7-8.)

**1.    Alleged Error in Not Including Plaintiff's Mild Mental Health Limitations in the RFC**

Plaintiff contends that the ALJ erred in not including any mental limitations in the RFC finding or erred by failing to provide sufficient explanation for why those limitations were excluded. (<u>Id.</u> at 4.)  The ALJ, however, in her opinion noted that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capability." (R. at 13.)  The medical exertional limitations noted by the state medical examiners were found by the ALJ to be only "somewhat persuasive" in that they found the plaintiff to be capable of medium exertion, rather than sedentary or light exertion. (R. at 86, 97.)  The ALJ added additional limitations on standing, walking, and overhead reaching based on her review of the record and plaintiff's testimony.

With respect to plaintiff's alleged mental health issues of depression and anxiety, the ALJ noted that plaintiff was referred for a mental health evaluation to Dr. Miller, who diagnosed

plaintiff with "no more than mild limitation in understanding, remembering and carrying out detailed instructions and no other limitations in the workplace." (Id.)  The ALJ found Dr. Miller's opinion to be persuasive and consistent with mental status findings during other medical providers' examinations. (R. at 21.)  The ALJ noted the opinions of the state mental health medical examiners were consistent with Dr. Miller's opinion, both upon initial determination and upon reconsideration.  The ALJ did not mention any different mental health findings from a medical source because there were none in the record. (R.at 21.)  As noted above, the state medical examiners' mental health findings were informed by Dr. Miller's opinion, which the ALJ found to be persuasive.

The Third Circuit Court of Appeals noted:

> When mental health is at issue, the functional limitation categories are "used to rate the severity of mental impairment(s)[.]" SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). While obviously related to the limitation findings, the RFC is a determination of "the most [a claimant] can still do despite [his] limitations" "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, at *2. … [T]he RFC "must be expressed in terms of work-related functions[,]"…. In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five.

> Additionally, and perhaps more importantly, social security regulations permit, and indeed require, an ALJ to offer "a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis. Id. at *7. That suggests a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019).  The categories for limitations on an individual's work-related mental activities listed on a medical source statement (SSA Form HA-1152 (01-2017) UF) are: none, mild, moderate, marked, extreme. (See R. at 957-958.)

The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

Gunn v. Kijakazi, 705 F. Supp. 3d 315, 330 (E.D. Pa. 2023) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). SSR 96-8p and POMS DI 24510.006).

The Third Circuit Court of Appeals has held that "the Commissioner can rely on evidence other than vocational expert testimony to establish that a claimant's nonexertional limitation does not diminish residual functional capacity." Sykes v. Apfel, 228 F.3d 259, 274 (3d Cir. 2000).  In the instant case, the ALJ found the plaintiff had only "no more than mild limitation," which, other than none, is the lowest level of impairment. (R. at 13.)  To develop plaintiff's RFC, the ALJ found persuasive Dr. Miller's opinion. (R. at 21.)  The state mental health examiners opined, based on Dr. Miller's opinion, that plaintiff had no mental health limitation that would prevent plaintiff from working in his past relevant job of programmer. (R. at 84, 97-98.)  There were no conflicting reports of mental health limitations in the record, and the ALJ noted that Dr. Miller's opinion was consistent with plaintiff's "mental health status during endocrinology and cardiology exams as well as during orthopedic examinations." (R. at 21.)

Dr. Miller's evaluation report listed plaintiff's "PROGNOSIS: Good, given that he is able to work." (R. at 956.)  Utilizing the mental health opinions in the record, and noting the only "other capabilities … affected by the impairment" identified by Dr. Miller was "learn[ing] new skills," the ALJ's finding of plaintiff being capable of returning to past relevant work is entirely consistent with taking plaintiff's mental health condition into account in the RFC.  The ALJ

reported that she did "not put any mental limitations in the RFC as the record fails to support a need for such limitations. The claimant receives only medication through primary care and the impairments have been considered non-severe." (R. at 20.) The ALJ concluded plaintiff was "capable of performing past relevant work as a computer programmer, DOT 030.162-010, described as sedentary, skilled work…." (R. at 21.) To explain that conclusion the ALJ commented:

> At hearing the claimant testified that he performed this job for a period of twenty seven years and the claimant's work records confirm that this work was done at a level considered to be substantial gainful activity. There is nothing in the record to show the claimant had not achieved at least average capability to function in this position and the claimant reported that he went to work elsewhere after being laid off.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

Id.

"The claimant bears the burden of demonstrating an inability to return to her past relevant work." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994)).

> In the first four steps [of the sequential analysis] the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

Plaintiff cites Perez-Vega v. Kijakazi, No. CV 22-3994, 2023 WL 3620747 (E.D. Pa. May 24, 2023), in asserting that mild limitations must be included when a skilled job, like plaintiff's past relevant work, is at issue. (Pl.'s Br., ECF. No. 8 at 7, 9.) In Perez-Vega, the

plaintiff asserted major depression as one of the bases for her disability claim. Id. at *1. Although the administrative law judge in Perez-Vega found that the plaintiff suffered from major depressive disorder and adjustment disorder, the administrative law judge concluded that the plaintiff' mental health impairments were not severe.  Id. at *2.  The plaintiff in Perez-Vega appealed and asserted that the administrative law judge erred by failing to consider the report of a consulting medical examiner and pointed out reasons why plaintiff's mild mental health limitations would adversely affect her ability to return to her past relevant skilled work as a caseworker or substance abuse counselor. Id. at *3.  The administrative law judge excluded any mild mental health limitations in determining the plaintiff's RFC, but did not adequately explain the reasons for doing so. Id. at *5-6.  On appeal, the court found the administrative law judge erred because she did not "'make an explicit finding that Plaintiff's limitations were so minimal that they would not limit Plaintiff's ability to perform skilled work.'" Id. at *5 (quoting Leichter v. Kijakazi, Civ. A. No. 20-6147, 2021 WL 5904619, at *9 (E.D. Pa. Dec. 13, 2021)).  The case was remanded to the administrative law judge to address the plaintiff's mild mental health limitations in the RFC where the prior relevant work was skilled. Id. at *7.  The court in Perez-Vega, in addressing the extent to which an administrative law judge needs to explain or consider mild mental limitations in an RFC where the past relevant work is skilled, noted that "District Court decisions are inconsistent." Id. at *4 (citing decisions).

A case similar to the instant case is Long v. Kijakazi, No. CV 20-1358-MN, 2022 WL 609620 (D. Del. Jan. 31, 2022), report and recommendation adopted, No. CV201358MNSRF, 2022 WL 609160 (D. Del. Feb. 15, 2022).  In Long, the plaintiff, like here, had only mild mental limitations, which the ALJ did not include in the RFC because the record did not support any

work restrictions from those mental health limitations, and the plaintiff was found to be not disabled and able to return to past skilled work as an accounting controller and casino dealer. Id. at *6-7.  The court in Long determined: "Where, as here, there is limited evidence to support work-related limitations stemming from the claimant's mental impairments, courts within this Circuit have found that any error in the ALJ's RFC assessment is harmless." Id. at *9 (citing Brumfield v. Saul, No. CV 19-4555, 2020 WL 4934315, at *7-8 (E.D. Pa. Aug. 21, 2020)).

Plaintiff's reliance on Perez-Vega is misplaced. The courts in Perez-Vega and Long each recognized there may be situations where the failure to include non-severe mental health impairments in the determination of a claimant's ability to return to past relevant skilled work or to explain why limitations from these impairments were not considered was harmless error.  In Perez-Vega, the court found that the error was harmful because the administrative law judge did not explain why the conflicting report of a consulting medical examiner was not considered. Perez-Vega, 2023 WL 3620747, at *3, 6.  The plaintiff in Perez-Vega also pointed out how her mild limitations would have impacted her ability to perform her past relevant skilled work as a caseworker or substance abuse counselor.

Like this case, in Long, the plaintiff was only found to have severe physical impairments. Long, 2022 WL 609620, at *1.  The plaintiff in Long, similarly, had "mental conditions [that] were managed with medication, [and] his mental status exams consistently revealed normal findings." Id. at *7.  The mental health treatment history in Long was more robust than plaintiff's in this case.  The administrative law judge in Long relied on the state agency psychological consultants and the totality of that plaintiff's record to conclude that "Long had only non-severe mental impairments with no mental limitations." Id.  As here, there was no contradictory medical

14

source statement to indicate otherwise.  In <u>Long</u>, the plaintiff did "not state what additional mental limitations are warranted by the evidentiary record," and there was "limited evidence to support work-related limitations stemming from the claimant's mental health impairments." <u>Id.</u> at *9.  Under the circumstances, "[e]ven if the ALJ's step four analysis was incomplete, any error was harmless." <u>Id.</u>

The court in <u>Long</u> noted, "there is no indication that an RFC of skilled versus unskilled work was determinative;" rather, the relevant factor is whether "the record shows the ALJ considered the mental limitations." <u>Id.</u> at *8.   Here, the record reflects the ALJ considered the mental limitations.  The record did not reflect any contradictory mental health opinions and plaintiff did not identify why his mild mental health limitations would affect his ability to perform his past relevant work.  Plaintiff did not meet the burden at step four and there is substantial evidence to support the ALJ's findings that plaintiff's mild mental health limitations did not impact his capacity to return to past relevant work.

## 2.    Alleged Error in Not Providing Sufficient Explanation for Why Mild Mental Health Limitations Were Excluded

With respect to this alleged error, the issue raised is, assuming the ALJ erred in failing to sufficiently explain why plaintiff's mild mental health limitations were excluded, whether that error was harmless.  Plaintiff argues that error was harmful.  Plaintiff alleges that the ALJ's opinion should have included greater analysis of the impact of plaintiff's mild mental health limitations or a more sufficient explanation for why those limitations were not included. (Pl.'s Br. ECF No. 8 at 7.)  Mild mental health limitations, however, may not require work-related limitations;

> Although an ALJ must consider limitations imposed by all of an individual's impairments, both severe and non-severe, when making their RFC assessment, there is no requirement that an ALJ must find or include limitations associated with mild impairments.
>
> …
>
> Because [claimant's] mild mental impairments did not translate into work-related limitations, the ALJ's failure to explicitly discuss those impairments in the RFC analysis does not amount to an error.

Long, 2022 WL 609620, at *7, *8.

The ALJ, in determining plaintiff's RFC, after review of the record and the medical source opinions, discussed the scant mental health information in the record, namely that plaintiff had "no more than mild limitation in understanding, remembering and carrying out detailed instructions and no other limitations in the workplace." (R. at 13.)  The ALJ noted plaintiff's mental health examination was "essentially normal" and that plaintiff had denied any mental health treatment, depression, or anxiety. (Id.)

The Supreme Court noted, that "the regulations afford claimants ample opportunity both to present evidence relating to their own abilities and to offer evidence that the guidelines do not apply to them." Heckler v. Campbell, 461 U.S. 458, 467 (1983).  Here, as described above, plaintiff failed to raise in the hearing testimony or in his brief how any mental health limitations would have work-related limitations with respect to his past relevant work as a programmer. Unlike the plaintiff in Perez-Vega, plaintiff did not identify how his mild mental health limitations would have limited his ability to return to his past relevant skilled work.  The ALJ concluded there was no work-related limitations related to the mild mental health limitations under the circumstances in this case.  Like in Long, the ALJ cannot be expected to write a more extensive discourse on the mild mental health limitations and any alleged error was harmless.

16

### 3. Not Presenting All Plaintiff's Mild Mental Health Limitations to the VE

Plaintiff alleges remand is required because the "VE must address the effect of nonexertional mental limitations." (Pl.'s Br., ECF. No. 8 at 9.) At step four of the sequential evaluation, an administrative law judge must determine if a plaintiff has the residual functional capability to perform the requirements of past relevant work. (R. at 12.) "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018). If a plaintiff is unable to perform any past relevant work, the analysis proceeds to the fifth step where the ALJ must determine what work a claimant can do considering the plaintiff's "residual functional capacity, age, education and experience." (R. at 12.) An administrative law judge often looks to the experience of a VE to receive input for their determination at step five.

In this case, the ALJ had a VE testify at the hearing and consider hypotheticals related to plaintiff's limitations and abilities. The VE was asked, based on the hypothetical of an individual with plaintiff's RFC, if there were jobs in the national economy that plaintiff could perform, and the VE responded that plaintiff's past relevant skilled work as a programmer was one such job that plaintiff could perform. (R. at 67-68.) The ALJ determined plaintiff's "no more than mild [mental health] limitation[s]" did not impact plaintiff's RFC. (R. at 13.) The ALJ found that plaintiff's RFC supported his ability to perform his past relevant skilled work as a programmer. The sequential analysis stopped at step four and the hypotheticals presented to the VE about plaintiff's ability to perform other work was not required.

For the reasons previously discussed in parts V.B. (1-2), there is substantial evidence to support the ALJ's finding in step four or, to the extent the ALJ erred, it was harmless error.

## VI.    CONCLUSION

The ALJ sufficiently explained the limitations she considered in forming plaintiff's RFC, taking into account plaintiff's medical record as a whole and considered the medical source opinions about plaintiff's mental health impairments. Plaintiff did not meet his burden at step four and the ALJ found him to be capable of past relevant work.  The sequential analysis ended at step four.  The record supported the ALJ's determination that plaintiff's mild mental health impairments had no work-related limitations.

Having considered the parties' motions, the record as a whole and the applicable law, the court finds there is substantial evidence in the record to affirm the ALJ's decision.  The court will grant defendant's motion for summary judgment (ECF No. 9) and deny plaintiff's motion for summary judgment (ECF No. 7).

An appropriate order and judgment will be entered.


Dated: September 23, 2025

                                                            BY THE COURT:


                                                             /s/ JOY FLOWERS CONTI
                                                            Joy Flowers Conti
                                                            Senior United States District Judge


18